**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:

                                                      Chapter 13

NICOLE LAURA ALEXIS LAWTONE-BOWLES

                                                      Case No. 25-35655 (KYP)

          Debtor.
---------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER OVERRULING
DEBTOR'S OBJECTION TO U.S. BANK'S PROOF OF CLAIM**

**APPEARANCES:**

NICOLE LAURA ALEXIS LAWTONE-BOWLES
*Pro Se Debtor*
56 Center Street
Highland Falls, NY 10928

ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC
*Counsel to U.S. Bank, as Trustee*
900 Merchants Concourse
Suite 310
Westbury, NY 11590
    By:    Suzanne Youssef, Esq.
              Kevin R. Toole, Esq.
                   Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

*Pro se* debtor Nicole Laura Alexis Lawtone-Bowles ("Debtor") filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 17, 2025. (ECF Doc. # 1.)[1]

---

[1]     "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case. Citations to other dockets will include the case name or case number.

Before the Court is the Debtor's objection ("Claim Objection")[2] to the proof of claim filed by U.S. Bank Trust Company, National Association, as trustee, as successor-in-interest to U.S. Bank National Association, as trustee, in trust for the holders of MLMI Trust 2002-AFC1 Asset-Backed Certificates, Series 2002-AFC1 ("U.S. Bank"). U.S. Bank filed a response to the Claim Objection.[3]

For the reasons set forth herein, the Debtor's Claim Objection is OVERRULED.

## **JURISDICTION**

An objection to a creditor's claim is ordinarily a core proceeding over which this Court has jurisdiction. *See* 28 U.S.C. §§ 157 and 1334; *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.). But, as explained *infra*, this Court's exercise of jurisdiction over the instant Claim Objection is barred by the *Rooker-Feldman* doctrine. Failure of subject matter jurisdiction is not waivable and may be raised any time by a party or the Court *sua sponte*. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

---

[2] *See Debtor's Motion to Strike Objection to Plan and for Determination of Fraudulent Assignment of Mortgage*, dated July 28, 2025 ("Debtor Brief") (ECF Doc. # 25), and *Debtor's Reply to Secured Creditor's Response to Motion to Strike Objection to Plan and for Determination of Fraudulent Assignment of Mortgage*, docketed on Aug. 20, 2025 ("Debtor Reply") (ECF Doc. # 30).

[3] *See Response to Motion to Strike Objection to Plan and for Determination of Fraudulent Assignment of Mortgage*, dated Aug. 19, 2025 ("U.S. Bank Brief") (ECF Doc. # 29).

2

## BACKGROUND[4]

A.  **Note, Mortgage, and Assignment**

On June 29, 2001, the Debtor executed an adjustable-rate note ("Note") and mortgage ("Mortgage") in the amount of $70,600.00. Alliance Funding, a Division of Superior Bank FSB ("Alliance Funding"), was the original lender, and the Note was secured by property located at 56 Center Street, Highland Falls, NY ("Property"). On July 9, 2001, Alliance Funding assigned the Mortgage to U.S. Bank ("Assignment"). Select Portfolio Servicing, Inc. ("SPS") was listed on the Assignment as U.S. Bank's servicer for the loan.[5]

B.  **LaSalle Bank Action**

On January 13, 2010, LaSalle Bank commenced an action in the Supreme Court of the State of New York, County of Orange ("State Court"), captioned *LaSalle Bank Nat'l Ass'n, as trustee for the holders of Merrill Lynch Mortgage Investors Trust Series 2002-AFC1 v. Nicole Lawtone-Bowles, et al.*, Index No. 0592/2010 ("LaSalle Bank Action") to foreclose on the Property. The LaSalle Bank Action was dormant for over five years, and the State Court eventually dismissed the case on December 20, 2018. (*See Decision and Order*, dated Dec. 20, 2018 ("12/20/2018 Decision").)[6] The State Court ruled that LaSalle Bank lacked standing because the documents it submitted to the court showed that U.S. Bank, not LaSalle Bank, was the holder of the Note and

---

[4]     This section includes multiple references to judicial documents and court records filed on dockets of other cases. This Court may take judicial notice of such documents and records. *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *accord In re Mehl*, 660 B.R 353, 359 (Bankr. S.D.N.Y. 2024); *see* FED. R. EVID. 201.

[5]     Documents evidencing the Note, Mortgage, and Assignment are attached to U.S. Bank's proof of claim ("POC") submitted in this case on August 20, 2025. (*See* Claim No. 14-1.)

[6]     A copy of the 12/20/2018 Decision is available at ECF Doc. # 31.

Mortgage on the Property. (12/20/2018 Decision at 5-6.) The State Court also noted that U.S. Bank had commenced a separate action in State Court claiming ownership over the Note and Mortgage (*id*. at 4-6); that action is described next.

**C.     U.S. Bank Action**

On April 3, 2018, U.S. Bank commenced an action in State Court captioned *U.S. Bank Nat'l Ass'n as trustee, successor in trust for holders of MLMI Trust 2002-AFC1, Asset-Backed Certificates, Series 2002-AFC1 v. Nicole Lawtone-Bowles, et al.*, Index No. EF003745-2018 ("U.S. Bank Action") seeking to vacate a purported satisfaction of the Mortgage filed with the Orange County Clerk. U.S. Bank moved for summary judgment, and the State Court denied the motion without prejudice to re-filing at the conclusion of discovery. (*See Order*, dated Nov. 15, 2018 ("11/15/2018 Order") at 4 (ECF U.S. Bank Action Doc. # 69).) In denying summary judgment, the State Court distilled the convoluted facts as follows:

> The tortured circumstances of this case appear to be as follows. In 2001, Ms. Bowles gave a mortgage on the [Property] in the amount of $70,600 to Alliance Funding. That same year, the mortgage was purportedly assigned to [U.S. Bank], but there is no evidence that the Assignment of Mortgage was ever recorded by the Orange County Clerk. Ms. Bowles claims that she satisfied the mortgage in response to a September 2004 demand by attorney Steven J. Baum, P.C. acting on behalf of [SPS], evidently the party responsible for servicing the mortgage. In support of her claim, Ms. Bowles tenders evidence that she possessed the funds necessary to satisfy the mortgage in consequence of a Workers Compensation settlement, and a copy of Mr. Baum's letter stamped "paid." A Satisfaction of Mortgage was purportedly executed by Alliance Funding on August 2, 2008, and recorded several years later on July 28, 2015.
>
> Meanwhile, in 2010, [LaSalle Bank] – not [U.S. Bank] – commenced an action to foreclose the mortgage on [the Property] and filed a notice of pendency. In 2016, while this action was pending, [the Debtor] sought a "Credit Line Mortgage" from [Hudson Valley Federal Credit Union ("HVFCU")]. HVFCU obtained a title report which reflected the Alliance Funding mortgage as well as its Satisfaction. The title report did not

4

>   reflect any Assignment of Mortgage to [U.S. Bank], as the Assignment had not been recorded, but it did reflect Lasalle's notice of pendency. In August 2016, HVFCU lent Ms. Bowles the sum of $110,000 and took what it deemed to be a first mortgage on the [Property]. In July of 2018, Lasalle's motion for a default judgment was denied for want of proof, but in the interim U.S. Bank had commenced the present action with respect to the same mortgage.

(11/15/2018 Order at 2-3.)

On May 20, 2019, U.S. Bank commenced a separate foreclosure action in State Court against the Debtor, which was assigned Index No. EF004014-2019. By order dated March 13, 2020, the State Court consolidated the foreclosure action into the U.S. Bank Action. (ECF U.S. Bank Action Doc. # 141.)

A trial in the consolidated U.S. Bank Action occurred on August 10 and 11, 2023, and the State Court issued its *Order and Decision After Trial* on July 9, 2024 ("Post-Trial Decision") (ECF U.S. Bank Action Doc. # 224). The State Court heard testimony from SPS employee Patrick Pittman as well as from the Debtor. The State Court did not find the Debtor's testimony or evidence to be credible. (Post-Trial Decision at 12 ("[The Debtor's] lack of credibility is repeatedly evidenced by her testimony and the documents admitted into evidence.").) Based on the evidence, the State Court made the following factual findings:

1. SPS is the authorized agent and attorney-in-fact for [U.S. Bank], with authority to act on behalf of [U.S. Bank] and pursue this foreclosure action.
2. On June 29, 2001, [the Debtor] made, executed and delivered the [Note and Mortgage] in the principal amount of $70,600.00 to Alliance Bank[.]
3. The [Mortgage] is secured by the [Property].
4. Pursuant to the terms of the [Note and Mortgage], [the Debtor] was responsible for making the required monthly [Mortgage] payments in order to repay the [Mortgage] loan.

5

5. [U.S. Bank] possessed the endorsed [Note] prior to the commencement of [the U.S. Bank Action].

6. A copy of the endorsed [Note] was filed with the pleadings upon the commencement of [the U.S. Bank Action].

7. [The Debtor] is in default of the terms of the [Note and Mortgage] for the payments that were due as of February 1, 2009 and thereafter.

8. On March 8, 2019, SPS . . . sent the default notice to [the Debtor] at the address of the [Property].

9. The notice of default was sent in compliance with SPS's business and standard practices and procedures to ensure that these notices were properly addressed and mailed.

10. On February 8, 2019, SPS . . . sent the 90-day notices pursuant to RPAPL §1304 to [the Debtor] at the address of the [Property] by certified and first class mail.

11. The notices pursuant to RPAPL §1304 were sent in compliance with SPS's business and standard practices and procedures to ensure that these notices were properly addressed and mailed by certified and first-class mail.

12. Thereafter, SPS filed the required proof of filing statement with the New York State Superintendent of Financial Services in compliance with RPAPL §1306.

13. [The Debtor] did not and has not cured the default.

14. The unpaid principal amount due and owing to [U.S. Bank] pursuant to the terms of the [Note and Mortgage] and modification agreements is $63,331.70, and [U.S. Bank] also is owed accrued interest, advance for escrow, fees and other recoverable fees and charges, all of which continue to accrue.

15. As of August 4, 2023, the total amount due and owing to [U.S. Bank] pursuant to the [Note and Mortgage] is $197,345.78.

16. A satisfaction of the [Mortgage] was recorded with the county clerk on July 28, 2015, but the satisfaction was fraudulent as the mortgage loan had not been satisfied and was [in] default.

17. The satisfaction of the subject [Mortgage] was made by [the Debtor], who lacked authority or any basis whatsoever to make and record the satisfaction.

18. The satisfaction of [Mortgage] is void, invalid, and must be canceled from public record.

19. The [Mortgage] remains a valid and enforceable lien upon the [Property].

6

20. [U.S. Bank's Mortgage] is first-in-time and has priority over the lien of [HVFCU].

(*Id.* at 13-16.)[7]

U.S. Bank subsequently moved for entry of a judgment of foreclosure, the Debtor filed opposition, and the State Court issued a *Decision and Order* granting the motion on January 6, 2025 ("Foreclosure Decision") (ECF U.S. Bank Action Doc. # 281). On the same day, the State Court entered a *Judgment* ("Foreclosure Judgment") (ECF U.S. Bank Action Doc. # 284) ordering the court-appointed referee to sell the Property via public auction.[8]

The Debtor subsequently moved to vacate the Foreclosure Judgment, U.S. Bank filed opposition, and the State Court issued a *Decision and Order* denying the motion on March 11, 2025 ("Motion to Vacate Decision") (ECF U.S. Bank Action Doc. # 345).[9]

---

[7] The Debtor appealed the Post-Trial Decision to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Appellate Division"), and that appeal was assigned case number 2024-06139 ("First Appeal"). By order dated October 4, 2024, the Appellate Division denied the Debtor's request for a stay pending appeal. (ECF First Appeal Doc. # 22.) By order dated February 10, 2025, the Appellate Division dismissed the appeal (ECF First Appeal Doc. # 38), and, on May 15, 2025, the New York Court of Appeals affirmed the dismissal of the appeal *sua sponte*. *U.S. Bank Nat'l Ass'n v. Lawtone-Bowles*, 259 N.E.3d 1117 (N.Y. 2025).

[8] The Debtor appealed the Foreclosure Decision and Foreclosure Judgment to the Appellate Division, and that appeal was assigned case number 2025-00308 ("Second Appeal"). By order dated May 5, 2025, the Appellate Division denied the Debtor's request for a stay pending appeal. (ECF Second Appeal Doc. # 16.)

[9] The Debtor has commenced two other civil actions related to the foreclosure of the Property. On March 14, 2025, the Debtor commenced an action in State Court against U.S. Bank, U.S. Bank's attorneys in the U.S. Bank Action, Steven J. Baum, SPS, and LaSalle Bank captioned *Nicole Lawtone-Bowles v. Steven J. Baum, et al.*, Index No. EF002478-2025 ("Lawtone-Bowles Action") alleging fraudulent misrepresentation, wrongful foreclosure, professional malpractice, and violation of New York Judiciary Law § 487. Following a motion by the defendants, the State Court entered a *Decision & Order* on September 26, 2025 ("9/26/2025 Decision") (ECF Lawtone-Bowles Action Doc. # 143) dismissing the Debtor's claims based on a lack of personal jurisdiction and because the doctrine of *res judicata* barred the claims asserted in the case. (9/26/2025 Decision at 10-12.)

On February 10, 2025, the Debtor commenced an action in the United States District Court for the Southern District of New York captioned *Nicole Lawtone-Bowles v. Steven J. Baum, et al.*, Case No. 25-cv-01218 (LLS) ("District Court Action") against the same parties that are defendants in the Lawtone-

7

**D.    This Bankruptcy Case**

As stated, the Debtor filed her Chapter 13 bankruptcy petition on June 17, 2025. The Debtor filed her proposed *Chapter 13 Plan* on June 23, 2025 ("Plan") (ECF Doc. # 10). The Plan did not identify U.S. Bank as a holder of a secured claim, and, on July 18, 2025, U.S. Bank filed an objection to the Plan on that basis. (ECF Doc. # 24.)

On July 28, 2025, the Debtor filed a document titled "Motion to Strike Objection to Plan and for Determination of Fraudulent Assignment of Mortgage" (*i.e.*, the Debtor Brief). Among other things, the Debtor asserted that U.S. Bank lacked standing to object to the Plan because it was not the holder of the Note and Mortgage. (Debtor Brief at 2.) U.S. Bank filed its response on August 19, 2025 asserting that it holds the Note and Mortgage and that it intended to timely submit a proof of claim in the bankruptcy case. (U.S. Bank Brief ¶¶ 2-4.) On August 20, 2025, U.S. Bank submitted its POC, which attached, among other things, a copy of the Note, Mortgage, and Assignment and asserted that U.S. Bank is owed $206,615.98. (POC, Part 2, Question 7.)

At an August 26, 2025 hearing, the Court informed the parties that it would treat the Debtor's submissions as an objection to U.S. Bank's POC (*i.e.*, the Claim Objection). On August 27, 2025, the Court entered an order permitting each side to make a further submission and scheduling a further hearing for October 7, 2025. (ECF Doc. # 39.) The Court heard oral argument on October 7 and took the matter under advisement.

---

Bowles Action as well as the State Court Justice who presided over the U.S. Bank Action. In the District Court Action, the Debtor asserted claims under the Truth in Lending Act, Real Estate Settlement Procedures Act, Fair Credit Reporting Act, and Racketeer Influenced and Corrupt Organizations Act. On August 6, 2025, the District Court dismissed the Debtor's claims. *Lawtone-Bowles v. Baum*, 25-CV-1218 (LLS), 2025 WL 2295253, at *8 (S.D.N.Y. Aug. 6, 2025). The Debtor filed an amended complaint on August 8, 2025. (ECF District Court Action Doc. # 19.)

8

**DISCUSSION**

A.  **Applicable Legal Standards**

Under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). A properly filed proof of claim is "prima facie evidence of the claim's validity and amount." FED. R. BANKR. P. 3001(f). "The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Creamer v. Motors Liquidation Co. GUC Tr.* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (citation, internal quotation marks, and alteration omitted). "When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

"Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments." *Wilson v. Deutsche Bank Nat'l Tr.* (*In re Wilson*), 410 F. App'x 409, 410 (2d Cir. 2011) (summary order) (citing *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983) and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923)). Four requirements must be met for the doctrine to apply: "(1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite federal court review and rejection of that judgment; and (4) the state court judgment must have been entered before the federal court

9

proceedings commenced." *Manjarrez v. Suntrust Mortg., Inc.* (*In re Manjarrez*), Adv. Pro. No. 25-01094 (MEW), 2025 WL 2347788, at *2 (Bankr. S.D.N.Y. Aug. 13, 2025) (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Courts in the Second Circuit "have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Feinstein v. Chase Manhattan Bank*, No. 06 CV 1512, 2006 WL 898076, at *2 (E.D.N.Y. Apr. 5, 2006) (citing supporting authorities); *Manjarrez*, 2025 WL 2347788, at *2 (stating the same proposition and citing supporting authorities); *Mehl*, 660 B.R. at 360 (stating the same proposition and citing supporting authorities); *Moise v. Ocwen Loan Servicing LLC*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017) (stating the same proposition and citing supporting authorities).

**B.    Analysis**

The *Rooker-Feldman* doctrine bars this Court from exercising subject matter jurisdiction over the Claim Objection. The four elements of the doctrine are met here. The first and fourth elements are plainly satisfied. The Debtor was the losing party in the U.S. Bank Action, and the Post-Trial Decision, Foreclosure Decision, and Foreclosure Judgment were all entered prior to the commencement of this bankruptcy case.

The second and third elements are also met because the Claim Objection challenges the rulings of the State Court and asks this Court to reject those rulings. The central premise of the Claim Objection is that U.S. Bank lacks standing to participate in this bankruptcy case because it is not the holder of the Note and Mortgage. (*See* Debtor Brief at 1-2; Debtor Reply ¶¶ 1-6, 9-10.) But the State Court ruled, after a two-day trial, that U.S. Bank is the valid holder of the Note and Mortgage with a senior lien on the

10

Property. (*See* Post-Trial Decision at 15 ("[U.S. Bank's] mortgage lien remains valid and has priority over the lien of co-defendant [HVFCU].").) The State Court subsequently entered the Foreclosure Decision and Foreclosure Judgment in favor of the U.S. Bank over the Debtor's objection.

Since U.S. Bank has obtained a valid foreclosure judgment, this Court may not consider *any* argument challenging U.S. Bank's status as a secured creditor. *Mehl*, 660 B.R. at 360-61. It is worth noting, however, that the arguments pressed by the Debtor in this bankruptcy case have already been considered and rejected by the State Court.[10] First, the Debtor asserts that in 2004, she endorsed and signed over an $81,000 workers' compensation settlement check to SPS's attorney Steven Baum in full satisfaction of the Mortgage. The State Court rejected the Debtor's version of events after the August 2023 trial in the U.S. Bank Action observing, among other things, that:

- the Debtor continued to make Mortgage payments until some time in 2009 despite her assertion that the Mortgage was paid off in 2004 (Post-Trial Decision at 10, 13);
- the Debtor did not have a copy of the $81,000 check and could not obtain a copy of the check from the workers' compensation insurer (*id.* at 11-12);
- the Debtor did not explain why she endorsed a check for $81,000 despite the purported Mortgage payoff amount being $70,479.13 (*id.* at 12);
- the Debtor told the police in 2011 that she stopped making Mortgage payments because of a motorcycle accident, and not because the debt had already been paid seven years earlier (*id.* at 11-12);
- the purported satisfaction of mortgage ("Satisfaction") that the Debtor filed with the Orange County Clerk in July 2015 was not a document prepared by SPS (*id.* at 6-7, 13);
- the Debtor wrote in the Satisfaction that Alliance Funding was the lender (*id.* at 11); and

---

[10] Some of these arguments are made in the Debtor Brief and Debtor Reply, while others are made in separate submissions the Debtor has filed on the docket of this bankruptcy case.

11

- the Debtor signed a forbearance agreement in June 2019 acknowledging, among other things, that she was in default under the Mortgage (*id.* at 5-6).

The State Court described the Debtor's testimony as follows: "Cross examination became a series of unanswered questions, inconsistencies, and reasons for her inability to remember or find things." (*Id.* at 12.) The State Court found that the filing of the Satisfaction with the county clerk was fraudulent, the Debtor lacked authority to make and record the Satisfaction, and the Satisfaction was "void, invalid, and must be canceled from the public record." (*Id.* at 15; *see also* Foreclosure Decision at 8 (rejecting Debtor's argument that the Mortgage was paid in full as "[t]hese arguments have already been considered and rejected by the Court"); Motion to Vacate Decision at 9 (same).)

Second, the Debtor argues that the Assignment is void because of the presence of irregularities in the assignment. The Debtor raised these issues during the August 2023 trial, and the State Court rejected her arguments noting that U.S. Bank possessed the original Note at the commencement of the U.S. Bank Action. (Post-Trial Decision at 5, 14.) In its decision denying Debtor's motion to vacate, the State Court further explained as follows:

> At trial, [the Debtor], through her counsel, questioned SPS's representative about the validity of the purported assignment of mortgage to [U.S. Bank] and any discrepancies contained therein. In the [Post-Trial Decision], the Court noted that despite "some queries remain[ing] unanswered . . . the fact that the original [Note] was in possession of [U.S. Bank] at the time of commencement of the action, or actions, and at the time of trial remained unchallenged." . . . Thus, the Court properly concluded that [U.S. Bank] established standing to commence this foreclosure action (*21st Mortgage Corporation v. Rudman*, 201 AD3d 618, 620 [2d Dept 2022] ["To have standing to commence a foreclosure action, a plaintiff must have been the holder or assignee of the note at the time the action was commenced"]).

12

(Motion to Vacate Decision at 8-9.)

Third, the Debtor argues that U.S. Bank's Mortgage claim is time-barred because the debt was accelerated in 2009, New York's Foreclosure Abuse Prevention Act ("FAPA") requires a creditor to commence a foreclosure action within six years of acceleration, and the U.S. Bank Action was not commenced until 2018. The State Court rejected this argument in its Foreclosure Decision. The State Court explained that the Debtor had failed to raise FAPA as a defense at or before the August 2023 trial. (Foreclosure Decision at 9.) In any event, U.S. Bank's foreclosure action was timely commenced because the prior "acceleration" of the debt by LaSalle Bank was a nullity:

> "[I]t is hornbook law that 'service of a complaint is ineffective to constitute a valid exercise of the option to accelerate a debt where the plaintiff does not have the authority to accelerate the debt or to sue to foreclose at that time. . . . [W]here a foreclosure action is dismissed for lack of standing, the purported acceleration of the mortgage debt is a nullity and does not start the six-year statute of limitations running on the entire mortgage debt" (*Wilmington Savings Fund Society, FSB v. Madden*, 78 Misc. 3d 736, 740-41 [Putnam Co. 2023], *citing, 21st Mortgage Corp. v. Rudman*, 201 AD3d 618, 621 [2d Dept 2022]).
>
> Accordingly, the [LaSalle Bank Action] was commenced by a party without standing and dismissed on that ground in 2018. The mortgage was validly accelerated in 2019 with the commencement of the instant action.

(*Id.* at 10-11; *see also* Motion to Vacate Decision at 9 (stating that the State Court had already addressed Debtor's statute-of-limitations argument and ruling that the argument was barred under the *res judicata* doctrine).)

Fourth, the Debtor argues that the Mortgage debt was discharged in a prior bankruptcy. Specifically, the Debtor commenced a Chapter 7 bankruptcy case in this Court in August 2017, *see In re Nicole Lawtone-Bowles*, Case No. 17-12169 (SMB), and received a bankruptcy discharge under 11 U.S.C. § 727 on January 24, 2018. (ECF Case

13

No. 17-12169 Doc. # 39.)  This issue was addressed by the State Court in its Post-Trial Decision:

> Prior to [the Debtor's] testimony, a lengthy discussion was had as to her filing for bankruptcy in or about 2018. . . .  It was ultimately determined that the bankruptcy process had no impact on these proceedings. Bankruptcy does not negate [U.S. Bank's] security interest in the [Property] and [U.S. Bank], on the record, waived any right to seek any deficiency on a mortgage that is discharged under a bankruptcy.

(Post-Trial Decision at 8-9); *accord In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018) ("A Chapter 7 bankruptcy discharge does not, in and of itself, discharge a creditor's lien. . . .  It is firmly established that a lien 'rides through' bankruptcy unaffected, unless the lien is disallowed or avoided.") (citations, internal quotation marks, and alteration omitted).

In sum, the State Court has expended considerable judicial resources in considering, and ultimately rejecting, the Debtor's arguments and entering the Foreclosure Judgment.  Under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to re-visit the State Court's rulings.  The Debtor's Claim Objection is therefore overruled.  *See Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700-01 ("If subject matter jurisdiction is lacking, the action must be dismissed.").

## ORDER

For the reasons set forth herein, the Debtor's Claim Objection is OVERRULED.



Dated: November 12, 2025
Poughkeepsie, New York

/s/ Kyu Y. Paek
_____
Hon. Kyu Y. Paek
U.S. Bankruptcy Judge