NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
In re:

NICOLE LAURA ALEXIS LAWTONE-BOWLES

        Debtor.

---------------------------------------------------------------x

Chapter 13

Case No. 25-35655 (KYP)

# MEMORANDUM DECISION AND ORDER
# DISMISSING CHAPTER 13 BANKRUPTCY CASE

**APPEARANCES:**

NICOLE LAURA ALEXIS LAWTONE-BOWLES
*Pro Se Debtor*
56 Center Street
Highland Falls, NY 10928

CHAPTER 13 STANDING TRUSTEE
399 Knollwood Road
Suite 102
White Plains, New York, 10603
By:    Thomas C. Frost, Esq.
           Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Standing Chapter 13 trustee Thomas C. Frost ("Trustee") has moved to dismiss

("Motion to Dismiss") the Chapter 13 bankruptcy case filed by *pro se* debtor Nicole

Laura Alexis Lawtone-Bowles ("Debtor").[1] The Debtor objects to the Motion to Dismiss.[2] For the reasons stated, the Motion to Dismiss is GRANTED.

## JURISDICTION

This Court has jurisdiction over the matters addressed herein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. These matters are core proceedings under 28 U.S.C. § 157(b)(A), (L), and (O).

## BACKGROUND

### A. The Chapter 13 Plan and Claims of Secured and Priority Creditors

The Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on June 17, 2025 ("Petition Date"). Six days later, the Debtor filed a Chapter 13 Plan ("Plan") (ECF Doc. # 10), under which the Debtor proposed to make sixty monthly payments of $100.00 to pay claims. (Plan, Part 2.)

The claims register in this case shows that seventeen creditors have filed proofs of claim in the total amount of $612,167.16. Three of the claims are pertinent to the matter before the Court. First, U.S. Bank Trust Company, National Association, as trustee, as successor-in-interest to U.S. Bank National Association, as trustee, in trust for the holders of MLMI Trust 2002-AFC1 Asset-Backed Certificates, Series 2002-AFC1 ("U.S.

---

[1] *See Application*, dated Nov. 13, 2025 ("Trustee Application") (ECF Doc. # 65); *Supplemental Application*, dated Dec. 16, 2025 ("Trustee Supp. Application") (ECF Doc. # 88). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2] *See Debtor's Response to Chapter 13 Trustee's Motion to Dismiss*, docketed on Nov. 16, 2025 ("Debtor Response") (ECF Doc. # 70); *Debtor's Opposition to Trustee's Supplemental Application and Motion to Dismiss With Request for Continued Plan Payments*, docketed on Dec. 17, 2025 ("Debtor Supp. Response") (ECF Doc. # 93).

2

Bank") filed a proof of claim in the aggregate amount of $206,615.98 ("U.S. Bank Claim"). (*See* Claim No. 14-1.) The U.S. Bank Claim is secured by a mortgage on the Debtor's real property located at 56 Center St., Highland Falls, NY ("Property"). (U.S. Bank Claim, Part 2, Question 9.) Of the total amount, $178,005.32 ("U.S. Bank Mortgage Arrears") represents the amount necessary to cure mortgage arrears as of the Petition Date. (*Id.*) The monthly mortgage payment is $518.91 ("U.S. Bank Mortgage Payment"). (*See* Attachment to U.S. Bank Claim at Part 4.)

There is a long history of litigation between U.S. Bank and the Debtor in New York state court, and the Debtor challenged the validity of the U.S. Bank Claim in this bankruptcy case. On November 12, 2025, this Court rejected the Debtor's arguments by issuing the *Memorandum Decision and Order Overruling Debtor's Objection to U.S. Bank's Proof of Claim* ("U.S. Bank Claim Decision") (ECF Doc. # 59)[3] and ruled that the U.S. Bank Claim is a valid secured claim. (U.S. Bank Claim Decision at 10-14.) The Court assumes familiarity with the U.S. Bank Claim Decision, and that decision is incorporated herein by reference.

Second, Hudson Valley Credit Union ("HVCU") filed a proof of claim in the aggregate amount of $96,753.97 secured by a mortgage on the Property ("HVCU Claim"). (*See* Claim No. 1-1.) Of the total amount, $1,551.84 ("HVCU Mortgage Arrears") represents the amount necessary to cure mortgage arrears as of the Petition Date. (HVCU Claim, Part 2, Question 9.) The monthly mortgage payment is $775.92 ("HVCU Mortgage Payment"). (*See* Attachment to HVCU Claim.) No party has filed an objection to the HVCU Claim.

---

[3]     A copy of the U.S. Bank Claim Decision is available on the Westlaw database at 2025 WL 3164631.

Third, the New York State Department of Taxation and Finance ("NY Tax Department") filed a tax claim with priority status under 11 U.S.C. § 507(a)(8) in the aggregate amount of $36,922.58 ("NY Tax Claim"). (*See* Claim No. 5-2.) No party has filed an objection to the NY Tax Claim.

**B.    The Debtor's Income**

The Debtor's *Schedule I*, docketed on August 21, 2025 ("Income Schedule") (ECF Doc. # 32-1), outlined her monthly income as being comprised of a social security disability payment of $1,592.00 and Supplemental Nutrition Assistance Program ("SNAP") benefits of $292.00. (Income Schedule, Part 2, Question 8.)

In the recently-filed Debtor Response, the Debtor reported that her request for reasonable disability accommodation by the New York City Department of Citywide Administrative Services and the New York City Department of Homeless Services was granted, and she began working as a clerical associate on November 10, 2025 with an annual salary of $58,020.00. (Debtor Response at ECF pp. 1-2.)

**C.    The Debtor's Expenses**

The Debtor's *Schedule J*, docketed on September 16, 2025 ("Expense Schedule") (ECF Doc. # 46), outlined her monthly expenses by category. First, the Debtor listed monthly expenses related to her ownership of the Property as follows:

- Real estate taxes:  $270.97
- Insurance:  $147.29
- Maintenance, repair, and upkeep:  $50.00

(Expense Schedule, Part 2, Question 4.) In the same category, the Debtor wrote that the mortgage payment to HVCU was $1,000 and omitted any mortgage payment to U.S. Bank. (*Id.*) Based on the U.S. Bank Claim and HVCU Claim, the U.S. Bank Mortgage

4

Payment and HVCU Mortgage Payment are $518.91 and $775.92, respectively. Thus, the Debtor's total monthly mortgage obligations are $1,294.83. When the monthly mortgage obligations are combined with the other expenses listed above, the Debtor's monthly expenses for the Property total $1,763.09.

The Debtor listed monthly expenses related to ownership of her car as follows:

- Gas and maintenance: $200.00
- Insurance: $440.00

(Expense Schedule, Part 2, Questions 12 and 15c.) She stated that her monthly car payment is $443.43 (*id.*, Part 2, Question 17a), but the proof of claim filed by her auto lender – AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") – showed that the monthly loan payment is $626.34. (*See* Promissory Note and Security Agreement attached to Claim No. 4-1.)[4] When the monthly loan payment is added to the other car-related expenses listed above, the monthly expenses for the car total $1,266.34.

The Debtor listed other monthly expenses as follows:

- Electricity, heat, natural gas: $1,275.95
- Water, sewer, garbage collection: $350.00
- Telephone, cell phone, internet, satellite, and cable services: $376.00
- Food and housekeeping supplies: $302.04
- Expenses looking for work and for law school:[5] $300.00

(Expense Schedule, Part 2, Questions 6, 7 and 21.) These other monthly expenses total $2,603.99.

---

[4] No party has filed an objection to GM Financial's claim.

[5] The Debtor attends Purdue Global Law School (formerly Concord Law School). (Plan at ECF p. 1.)

5

Thus, the Debtor's total monthly expenses for the Property ($1,763.09), car ($1,266.34), and other items ($2,603.99) total **$5,633.42**.

**D.     The Motion to Dismiss**

On November 13, 2025, the Trustee filed his Motion to Dismiss, arguing, among other things, that the Plan cannot be confirmed because it fails to provide for the full repayment of secured and priority claims. (Trustee Application ¶ 3.) The Debtor filed the Debtor Response three days later, reporting that she had recently procured employment as a clerical associate with an annual salary of $58,020.00 and requesting additional time to file an amended plan. (Debtor Response at ECF p. 2-3.)

The Court held a hearing on the Motion to Dismiss on December 2, 2025. At the hearing, the Court allowed the parties to make supplemental submissions. Thus, the Trustee filed the Trustee Supp. Application on December 16, 2025, and the Debtor filed the Debtor Supp. Response the following day. The Court took the matter under advisement.

## DISCUSSION

**A.     Applicable Legal Standards**

The requirements for confirmation of a Chapter 13 plan are set forth in 11 U.S.C. § 1325(a). As pertinent here, section 1325(a)(5) provides for plan confirmation if, with respect to each allowed secured claim, (i) such secured creditor has accepted the plan, (ii) the debtor surrenders the property securing such claim to the secured creditor, or (iii) the secured creditor retains its lien and receives payments over the life of the plan that will total the present value of the allowed secured claim. 11 U.S.C. § 1325(a)(5); *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 956-57 (1997). Where a Chapter 13 debtor intends to retain the property subject to a secured creditor's lien, the plan must pay the

6

claim in installments with interest to ensure that the present value of the plan payments "equals or exceeds that of the allowed claim." *In re Velez*, 431 B.R. 567, 570-71 (Bankr. S.D.N.Y. 2010) (citation omitted).

Under 11 U.S.C. § 1322(a)(2), a Chapter 13 plan must provide for the full payment of priority claims under 11 U.S.C. § 507, including priority tax claims, unless the holder of such claim agrees to a different treatment.

On request of a party in interest, the Court may dismiss a Chapter 13 bankruptcy case "for cause." 11 U.S.C. § 1307(c). "Cause" includes a "denial of confirmation of a plan under section 1325 of [the Bankruptcy Code] and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5). Further, dismissal is appropriate when there is an unreasonable delay that is prejudicial to creditors. 11 U.S.C. § 1307(c)(1). Where a debtor has no prospect of proposing a confirmable Chapter 13 plan, dismissal under section 1307(c)(1) is proper. *In re Merhi*, 518 B.R. 705, 719-20 (Bankr. E.D.N.Y. 2014).

**B.    Analysis**

Initially, the Plan is unconfirmable. As set forth *supra*, a Chapter 13 plan must (i) provide for the full payment of priority claims, and (ii) the full payment (with interest) of secured claims to the extent the debtor intends to retain the collateral. Here, the following claims must be paid in full: (1) NY Tax Claim of $36,922.58, (2) HVCU Mortgage Arrears of $1,551.84, and (3) U.S. Bank Mortgage Arrears of $178,005.32. The sum of these claims equals $216,479.74. The Plan, as proposed, provides for monthly payments of $100.00 over sixty months, or $6,000.00 total. Since the Plan fails to pay these claims in full, confirmation must be denied under 11 U.S.C. §§ 1322(a)(2) and 1325(a)(5).

7

As stated, the Court may dismiss a Chapter 13 case if it denies confirmation of a plan and denies a request for more time to file an amended plan. Here, the Debtor requests more time to file an amended plan to account for her new job as a clerical associate. Ordinarily, more time should be given to a Chapter 13 debtor to file an amended plan where they obtain a new job with a higher salary. However, in this instance, the Debtor's efforts to file any new plan would be futile.

The Debtor's gross salary as a clerical associate is $58,020.00 annually, or $4,835.00 monthly. Even without taking into consideration paycheck reductions for taxes (*i.e.*, federal, state, local, social security) or other costs (*e.g.*, health insurance), the Debtor's monthly income of $4,835.00 would not be sufficient to cover her monthly expenses of $5,633.42, let alone leave her with disposable income to contribute to a plan that requires a minimum of $216,479.74[6] in total payments to achieve confirmation.

It is uncertain whether the Debtor is entitled to continue receiving social security disability payments ($1,592.00/month) and/or SNAP benefits ($292.00/month) now that she is employed as a clerical associate. But the inclusion of these benefits does not change the result. The sum of these benefits and the Debtor's monthly gross income as a clerical associate is $6,719.00. If the Debtor's monthly expenses of $5,633.42 are subtracted with this amount, the Debtor's monthly disposable income would be no greater than $1,085.58. Assuming the Debtor contributes 100% of this disposable income toward a sixty-month Chapter 13 plan, the Debtor's plan contributions would be

---

[6]    This amount does not include the interest that would be owed to secured creditors U.S. Bank and HVCU.

8

capped at $65,134.80, falling far short of paying the secured and priority claims totaling $216,479.74.

The Debtor challenges the validity of the secured and priority claims. (*See generally* Debtor Supp. Response.) But the HVCU Claim and NY Tax Claim were filed in June and July 2025, respectively, and no party has filed an objection to either claim. Moreover, this Court has already ruled in the U.S. Bank Claim Decision that the U.S. Bank Claim is a valid secured claim. That ruling is law of the case. *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (under the "law of the case" doctrine, once a court issues a ruling, that ruling "should continue to govern in subsequent stages of the same case") (citations and internal quotation marks omitted).

Because any amendment to the Plan would be futile, the Debtor's request for additional time is denied, and this bankruptcy case is dismissed under 11 U.S.C. § 1307(c)(1) and (5).

**C.    Remaining Motions**

There are several additional motions that remain outstanding. First, on November 26, 2025, the Debtor filed a motion to "re-impose" the automatic stay ("Debtor Motion to Re-Impose Stay") (ECF Doc. # 77) after the Court granted relief from the automatic stay in favor of auto lender GM Financial. (*See* ECF Doc. # 74 (order granting relief from stay).) Dismissal of the case results in the automatic stay no longer being in effect. *See* 11 U.S.C. § 362(c)(2)(B). Since there is no longer a stay to re-impose, the motion is denied as moot.

Next, U.S. Bank filed a motion for relief from the automatic stay on February 2, 2026 ("U.S. Bank Motion for Stay Relief") (ECF Doc. # 100). A hearing on the U.S. Bank Motion for Stay Relief is scheduled for February 24, 2026. As stated, dismissal of

the case results in the automatic stay no longer being in effect under 11 U.S.C. § 362(c)(2)(B). Therefore, the relief requested in U.S. Bank's motion is mooted by the dismissal of the case.

Last, on December 2, 2025, the Debtor filed a motion for a stay of the foreclosure on the Property pending appeal of the foreclosure judgment in state court ("Debtor Motion for Stay Pending Appeal") (ECF Doc. # 84). (*See* Debtor Motion for Stay Pending Appeal at ECF p. 4 ("I urgently request that this court grant a stay of the foreclosure sale pending resolution of my appeal in the state court system.").) This motion is denied. Although the filing of a bankruptcy case has the effect of staying a foreclosure action by operation of the automatic stay, federal courts may not otherwise interfere with a state court's adjudication of a foreclosure action. *See El Bey v. Bellis*, Case No. 3:19-cv-336 (KAD), 2019 WL 2502929, at *4 (D. Conn. June 17, 2019) ("A state foreclosure action is one of the types of actions in which federal courts abstain from interfering, pursuant to [*Younger v. Harris*, 401 U.S. 37 (1971)].") (citation, internal quotation marks, and alterations omitted); *Billie v. Deutsche Bank Tr. Co.*, Civ. No. 3:18CV01176, 2018 WL 10579837, at *5 (D. Conn. Sept. 14, 2018) ("It is well settled that judgments of foreclosure are fundamentally matters of state law. The Second Circuit has repeatedly concluded that the federal district courts have no jurisdiction to review a state court foreclosure.") (citations, internal quotation marks, and alterations omitted) (report and recommendation), *adopted by* 2018 WL 10579825 (D. Conn. Oct. 24, 2018). In fact, the Debtor sought a stay of the foreclosure pending appeal in state court and was denied that relief. (*See* U.S. Bank Claim Decision at 7 n.8.)

## **CONCLUSION AND ORDER**

For the reasons stated,[7] it is ORDERED that

- confirmation of the Plan is DENIED under 11 U.S.C. §§ 1322(a)(2) and 1325(a)(5);
- the Debtor Motion to Re-Impose Stay is DENIED as moot;
- the U.S. Bank Motion for Stay Relief is DENIED as moot;
- the Debtor Motion for Stay Pending Appeal is DENIED;
- the Trustee's Motion to Dismiss is GRANTED; and
- the Debtor's bankruptcy case is DISMISSED under 11 U.S.C. § 1307(c)(1) and (5).

Dated:    February 17, 2026
          Poughkeepsie, New York

                                          /s/ *Kyu Y. Paek*
                                          Honorable Kyu Y. Paek
                                          United States Bankruptcy Judge

---

[7] Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.